```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X
GARY LA BARBERA, LAWRENCE KUDLA,    :
DENNIS GARTLAND, THOMAS             :
GESUALDI, THEODORE KING, CHESTER,   :
BROMAN, FRANK FINKEL, and           :
JOSEPH FERRARA, as Trustees         :
and Fiduciaries of the Local        :
282 Welfare, Pension, Annuity       :
Job Training, and Vacation and      :
Sick Leave Trust Funds,             :
                                    :
                Plaintiffs,         :   99 Civ. 10595 (MBM)
                                    :
     -against-                      :   OPINION & ORDER
                                    :
A.F.C. ENTERPRISES, INC.,           :
A.F.C. ENTERPRISES, INC./C.A.C.     :
INDUSTRIES, INC., J/V, EM-ROSE      :
ENTERPRISES, INC., LEE TRUCKING     :
CO., PIRRAGLIA CONTRACTING, INC.,   :
SETTE-JULIANO CONSTRUCTION          :
AND LANDSITE CONTRACTING CORP.,     :
T.P.F. INDUSTRIES,                  :
                                    :
                Defendants.         :
-----------------------------------X
```

APPEARANCES:

WILLIAM K. WOLF, ESQ.
ABIGAIL R. LEVY, ESQ.
(Attorneys for Plaintiffs)
Friedman & Wolf
1500 Broadway, Suite 2300
New York, NY 10036
(212) 354-4500

JOSHUA MARCUS, ESQ.
(Attorney for Defendant Lee Trucking Co.)
Franklin, Gringer & Cohen, P.C.
666 Old Country Road, Suite 202
Garden City, NY 11530
(516) 228-3131

MICHAEL B. MUKASEY, U.S.D.J.

By order dated July 5, 2004, I entered default judgment against Defendants Lee Trucking, Inc., and Sette-Juliano Construction and Landsite Contracting Corp. ("Sette-Juliano"), and referred this case to Magistrate Judge Douglas F. Eaton for an inquest as to damages. After receiving submissions from plaintiffs and defendant Lee Trucking,[1] Magistrate Judge Eaton issued a Report and Recommendation, dated June 3, 2005 (the "Report"), awarding Plaintiffs unpaid contributions, unpaid interest, additional damages, and other amounts. Lee Trucking has timely filed written objections to the Report pursuant to Fed. R. Civ. P. 72(b) and 28 U.S.C. § 636(b)(1) (2000). For the reasons set forth below, I deny Lee's objections and adopt the Report in its entirety.

I.

Defendants Lee Trucking and Sette-Juliano are parties to Collective Bargaining Agreements ("CBAs") with Teamsters Local 282 ("Local 282") which obligate them to make contributions to the Local 282 Welfare, Pension, Annuity, Job Training, and Vacation and Sick Leave Trust Funds (the "Funds"). (Cody Decl. ¶ 2) The Funds are operated pursuant to the terms of the Agreement and Declaration of Trust (the "Trust Agreement"), which is

---

[1] Defendant Sette-Juliano made no submissions.

incorporated by reference into the CBAs.  (Id. ¶ 3)  Under Article IX of the Trust Agreement, the trustees of the Funds (the "Trustees") are entitled to audit the books and records of any employer, including defendants, at any time, and an employer's failure to produce such books and records within 20 days constitutes a material breach of the Trust Agreement.  (Id. ¶ 6)

On October 18, 1999, the Trustees filed a complaint against Lee Trucking, Sette-Juliano, and three other employers to compel them to submit to an audit.  (Compl. ¶ 1)  The complaint also sought to collect any delinquent contributions revealed by the audits, as well as interest and damages under Section 502(g)(2) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(g)(2).  (Compl. ¶ 1; Levy Decl. ¶ 3)  After two of the employers were dropped from the lawsuit and the other three failed to respond to the Trustees' complaint, the Trustees moved for a default judgment.  (Levy Decl. ¶ 4) I granted the Trustees' motion by Order dated July 5, 2004, and referred the case to Magistrate Judge Eaton for an inquest as to damages.  A default judgment in favor of plaintiffs was entered on October 21, 2004, requiring the three remaining defendants –- Lee Trucking, Sette-Juliano, and EM-Rose Enterprises, Inc. ("EM-Rose") -- to submit certain books and records for audit within 30 days.  (Id. ¶ 5)  Plaintiffs subsequently dropped their suit against EM-Rose.  (Id. ¶ 6)

Because neither Lee Trucking nor Sette-Juliano submitted records sufficient to complete their audits, plaintiffs instructed their independent auditors at Abrams, Herde & Merkel LLP ("AHM") to audit the two companies using a set formula prescribed in the Trust Agreement. (Report at 2; Levy Decl. ¶¶ 14, 15, 16, 21) Those audits concluded that Lee Trucking owed the Funds $84,508.04 in unpaid contributions and $100,146.60 in interest, while Sette-Juliano owed $40,582.48 in unpaid contributions and $60,479.11 in interest. (Novick Decl. ¶¶ 11, 13, 19, 21) The interest on the unpaid contributions was calculated at a rate of 16 percent. (Id. ¶¶ 13, 21)

Magistrate Judge Eaton adopted the amounts prescribed in the AHM audit in his June 3, 2005 Report over several objections advanced by Lee Trucking, including a challenge to the 16 percent rate used to calculate the interest. (See Report at 3-11) Magistrate Judge Eaton also awarded $100,146.60 from Lee Trucking and $60,479.11 from Sette-Juliano in "additional damages" pursuant to the Trust Agreement and Section 502(g)(2)(C) of ERISA, 29 U.S.C. § 1132(g)(2)(C) (Report at 12); $1,195.00 from Lee Trucking and $1,420.00 from Sette-Juliano in audit fees (Report at 12-13); $4,030.07 from both Lee Trucking and Sette-Juliano in attorney's fees (Report at 13-17); and $112.43 from Lee Trucking and $144.43 from Sette-Juliano in court-related costs (Report at 17).

On June 9, 2005, Lee Trucking filed objections to the Report pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b).  Neither Sette-Juliano nor plaintiffs have filed any objections, and plaintiffs ask that the Report be adopted in its entirety.

II.

A district court reviewing a magistrate judge's report follows the standards established in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b).  The district judge must make a de novo determination of those parts of the report to which timely written objection has been made by any party, but may adopt the uncontested portions of the report unless they show clear error. See Thomas v. Arn, 474 U.S. 140, 151-52 (1985); Grassia v. Scully, 892 F.2d 16, 19 (2d Cir. 1989); Tapia-Garcia v. United States, 53 F. Supp. 2d 370, 373 (S.D.N.Y. 1999).

This court has jurisdiction based on Section 502(e)(1) of ERISA, 29 U.S.C. § 1132(e)(1), and Section 301©), of the Labor Management Relations Act, 29 U.S.C. § 185©).

III.

Lee Trucking's sole objection to Magistrate Judge Eaton's Report concerns the Report's determination of the interest rate to apply to its unpaid contributions.  After

4

careful analysis, the Report concluded the applicable annual rate was 16 percent. (See Report at 5-11) Lee Trucking disagrees and argues that the Report should have applied a six percent annual rate. (See Def. Objections to the Report and Recommendations of Magistrate Judge Eaton ("Def. Objections") at 1-3)

The applicable interest rate owed on the unpaid contributions is set forth in the Trust Agreement, which states:

> In addition to any other remedies to which the parties may be entitled an Employer in default for five working days shall be obligated to pay interest, <u>at the rate specified in Section 5-501 of the General Obligations Law of the State of New York, as the same may be amended from time to time</u>, on the monies due to the Trustees from the first day of the month when the payment was due to the date when payment was made, together with attorney's fees, auditor's fees and liquidated damages . . ..

(Cody Decl., Ex. 1, at 30 (emphasis added)) Section 5-501 of the General Obligations Law ("G.O.L.") instructs: "The rate of interest, as computed pursuant to this title, upon the loan or forbearance of any money, goods, or things in action . . . shall be six per centum per annum <u>unless</u> a different rate is prescribed in section fourteen-a of the banking law." N.Y. Gen. Oblig. Law § 5-501(1) (McKinney 2001) (emphasis added). Section 14-a of the Banking Law then provides: "The maximum rate of interest provided for in section 5-501 of the general obligations law shall be <u>sixteen per centum per annum</u>." N.Y. Banking Law § 14-a(1) (McKinney 2001) (emphasis added). The question naturally arises

5

whether the rate "specified" by Section 5-501 is therefore six percent or 16 percent. If Section 14-a(1) actually "prescribes" a "different rate," logic would dictate that the six percent rate has no effect because the "unless" clause causes the 16 percent rate to govern the provision. If Section 14-a(1) does not "prescribe" a rate, however, the six percent rate would be the one "specified" by Section 5-501. Federal courts confronted with the two statutes have been unable to agree on how the provisions should be interpreted.

Many courts -- including several interpreting the same Trust Agreement provision as in the present action -- have concluded that Section 14-a of the Banking Law does indeed "prescribe" a 16 percent rate. Some of these courts have arrived at this conclusion with little analysis, treating Section 5-501(1) of the G.O.L. as a simple cross-reference to the rate set in Section 14-a(1). <u>See</u>, <u>e.g.</u>, Report and Recommendation, <u>Bourgal</u> v. <u>Robco Contracting Enters., Ltd.</u>, No. 93 Civ. 2664 (ADS)(VVP), at 8 (E.D.N.Y. Aug. 8, 1997), adopted by Judge Spatt (Sept. 24, 1997) (unpublished order); Second Report and Recommendation, <u>La Barbera</u> v. <u>Bevel Props., Inc.</u>, No. 02 Civ. 6673 (ARR)(VVP), at 4 (E.D.N.Y. Mar. 11, 2005), adopted by Judge Ross (Mar. 30, 2005) (unpublished opinion and order). Other courts have pointed to another provision of the Banking Law, Section 14-a(5), as evidence that the 16 percent rate is

6

"prescribed." Section 14-a(5) provides:

> Whenever reference is made in this chapter or in any other law, contract or document to the rate of interest prescribed or to be prescribed by the banking board or the superintendent pursuant to this section or any former section fourteen-a of this chapter, <u>such reference shall be deemed a reference to the rate of interest prescribed in subdivision one of this section.</u>

N.Y. Banking Law § 14-a(5) (emphasis added); see Report and Recommendation, <u>La Barbera</u> v. <u>Bulldog Constr., Ltd.</u>, No. 98 Civ. 7286 (JS)(MLO), at 6 (E.D.N.Y. July 28, 2005), adopted by Judge Seybert (Aug. 12, 2005) (unpublished order). Still others have looked to the history of the G.O.L. and Banking Law, as well as state and federal cases construing earlier iterations of both laws, to arrive at 16 percent. (<u>See</u> Report at 5-11); <u>see</u> <u>also</u> Report and Recommendation, <u>La Barbera</u> v. <u>Eagle Scaffolding Co.</u>, No. 02 Civ. 7288 (LBS)(DFE), at 4-8 (S.D.N.Y. March 21, 2005), adopted by Judge Sand (Apr. 18, 2005) (unpublished endorsement). Taken together, these decisions appear to constitute the majority view.

However, some courts have reached the opposite result and concluded that the six percent rate is "specified." The most noteworthy of these decisions is <u>King</u> v. <u>JCS Enterprises</u>, a lengthy published opinion issued in 2003. See 288 F. Supp. 2d 287 (E.D.N.Y. 2003). Faced with the same Trust Agreement provision as in the present case, <u>King</u> conducted a detailed analysis of the

7

G.O.L. and Banking Law's text, history, and related case law and concluded that the Banking Law "simply set a maximum interest rate understanding that the legal rate would thereby be set by the General Obligations Law." Id. at 290; see id. at 288-91. The Court asserted that any other reading would render the G.O.L.'s six percent interest rate "meaningless" because the Banking Law would always supersede the G.O.L. Id. at 289. Although the Court conceded that there were some contrary persuasive cases, it dismissed these cases because "[n]one of [them]. . .explained why an interest rate clearly labeled as a 'maximum' should be applied in lieu of the rate specified in the General Obligations Law." Id. at 291. At least two subsequent decisions have adopted King's reasoning and construed the Trust Agreement provision to set a six percent rate. See LaBarbera v. ADCO Serv. Corp., No. 02 Civ. 5289 (SJ), 2005 WL 755758, at *2 (E.D.N.Y. Mar. 29, 2005); Findings of Fact and Conclusions of Law, La Barbera v. A. Morrison Trucking, Inc., No. 00 Civ. 7218 (RLM), at 34-36 (E.D.N.Y. Mar. 8, 2004).

For the reasons explained below, I respectfully disagree with King's analysis and join the majority view that the rate "specified" under Section 5-501 of the G.O.L. is 16 percent.

The statutory text alone does not supply a clear answer as to which rate applies. Section 5-501(1) of the G.O.L. states that the six percent rate governs "unless a different rate is

prescribed" in the Banking Law. N.Y. Gen. Oblig. Law § 5-501(1) (emphasis added). The Banking Law, in turn, explains that "[t]he maximum rate of interest provided for in section 5-501 . . . shall be sixteen per centum per annum," N.Y. Banking Law § 14-a(1) (emphasis added), but does not state explicitly that it is actually "prescribing" a rate. King found the two provisions to be "unambiguous" and concluded that a "plain reading" of the statutes rendered the six percent rate the rate "specified" by the G.O.L. 288 F. Supp. 2d at 288-89. The Court reasoned that the critical word in Section 14-a(1) was "maximum" -- by referring to a "maximum" rate, "Section 14-a(1) . . . clearly provides a cap on the interest rate that can be designated by section 5-501." Id. at 288. "The two laws work together. One prescribes the legal rate and the other 'prescribes' the maximum." Id. at 289. However, the statutory text can be read another way to reach the opposite result: one could interpret Section 14-a(1) as simply describing the nature of the rate it is prescribing -- the "maximum rate of interest provided for in section 5-501" -- and then setting this rate at "sixteen percent per annum." N.Y. Banking Law § 14-a(1). Under this reading, the "maximum" rate and the "legal" rate are the same thing; Section 5-501 designates a single rate of 16 percent, as dictated by its "unless" clause.

The purpose of Section 5-501(1) suggests that this

9

latter interpretation is correct. That section is part of a larger statutory scheme in Title 5 of the G.O.L. that prohibits usury; its function is to set the maximum rate that may legally be charged on various contracts. See generally N.Y. Gen. Oblig. Law §§ 5-501 - 5-531. For example, Section 5-501(2) provides that "[n]o person or corporation shall . . . charge, take or receive any money, goods or things in action as interest . . . at a rate <u>exceeding the rate above prescribed</u> [in § 5-501(1)]." Id. § 5-501(2) (emphasis added); see also id. § 5-511 (declaring contracts void if they set a rate higher "than is prescribed in section 5-501"); id. § 5-513 (creating right of action for individuals who are charged an amount higher than "is allowed to be received pursuant to section 5-501"). The various provisions in Title 5 make no distinction between a "legal" rate and a "maximum" rate –- they simply prohibit contracts or other obligations that set a rate higher than the single rate "prescribed in section 5-501." There is no question that this rate is the 16 percent maximum set forth in Section 14-a(1). See N.Y. Comp. Codes R. & Regs. tit. 3, § 4.1 (2005) ("For the purpose of General Obligations Law section[] 5-501. . .the maximum rate of interest to be charged, taken or received . . . is . . . 16.00% per annum."); Seidel v. 18 East 17th Street Owners, Inc., 79 N.Y.2d 735, 740, 586 N.Y.S.2d 240, 242 (1992) (applicable rate under Section 5-501(2) of the G.O.L. is 16

10

percent rate set in Banking Law § 14-a(1)); Tower Funding, Ltd. v. David Berry Realty, Inc., 302 A.D.2d 513, 514, 755 N.Y.S.2d 413, 415 (2d Dep't 2003) (citing G.O.L. § 5-501(1) and Banking Law § 14-a(1) for the proposition that "[a] loan is usurious if its interest rate exceeds 16% per annum").

The history of Sections 5-501 and 14-a also suggests that Section 5-501 designates a single rate and that that rate is 16 percent. When Section 14-a was first established in 1968, the G.O.L. and the Banking Law were written to work in tandem, with the G.O.L. looking to the Banking Law to set the "maximum rate" while supplying a default rate of six percent that applied only "if no rate has been . . . prescribed" by Section 14-a. 1968 N.Y. Sess. Laws. 598 (McKinney). Section 14-a vested the state banking board with the authority periodically to "prescribe by regulation a rate of interest . . . as the maximum rate of interest to be charged, taken or received" pursuant to Section 5-501. See id. at 599-600 (emphasis added). Over the next decade, that board exercised its authority and always prescribed a maximum rate that supplanted the G.O.L.'s six percent maximum. See N.Y. Comp. Codes R. & Regs. tit. 3, § 4.1. State and federal courts understood the interplay between the two statutes and repeatedly found that whatever maximum rate had been set by the banking board was the rate specified in Section 5-501 of the G.O.L. -- the "legal" rate and "maximum" rate were one and the

11

same. See, e.g., Rachlin & Co. v. Tra-Mar, Inc., 33 A.D.2d 370, 373-75, 308 N.Y.S.2d 153, 157-59 (1st Dep't 1970); Trans World Airlines v. Hughes, 449 F.2d 51, 80-81 (2d Cir. 1971); Jamaica Sav. Bank v. Giacomantonio, 300 N.Y.S.2d 218, 219-22 (Sup. Ct. Queens County 1969); Gelco Builders v. Simpson Factors Corp., 301 N.Y.S.2d 728, 732-33 (Sup. Ct. N.Y. County 1969); Rock Trans. Props. v. Hartford Fire Ins. Co., 312 F. Supp. 341, 348-49 (S.D.N.Y. 1970); Kaufman v. Chase Manhattan Bank, 370 F. Supp. 279, 280-81 (S.D.N.Y. 1974).

In 1978, the Legislature repealed the 1968 version of Section 14-a and replaced it with a substantially similar provision that transferred authority for setting the "rate of interest provided in section 5-501" pursuant to a formula to the superintendent of banks. See 1979 N.Y. Sess. Laws 81 (McKinney). Despite this change to the mechanism for setting the maximum rate, the two statutes interacted as they had before: Section 14-a prescribed a maximum interest rate that always superseded the six percent default rate in Section 5-501 and constituted the sole rate "specified" in Section 5-501. See id.

In 1980, the 1978 version of Banking Law Section 14-a was repealed and replaced with the current version. This new version eliminated the role of the superintendent of banks and provided instead that "[t]he maximum rate of interest provided for in section 5-501 of the general obligations law shall be

12

sixteen per centum per annum." See 1981 Sess. Laws 33-34 (McKinney). At the same time, the text of Section 5-501(1) was adjusted to remove the reference to the banking board and provide that the six percent rate would apply "unless a different rate is prescribed in section fourteen-a of the banking law." Id. at 71.

The way to read the amended statutes in light of their history is that the amendments once again altered the mechanism by which the maximum rate is established, but did not change the basic relationship between the two laws. That is, the Banking Law still supersedes the G.O.L.'s six percent default rate and supplies the rate "specified" by Section 5-501. The only difference is that this "maximum" or "legal" rate is now fixed by Section 14-a(1) rather than by the banking board or the banking superintendent. The G.O.L.'s six percent rate is not rendered "meaningless," see King, 288 F. Supp. 2d at 288-89; rather, it remains, as it has since 1968, a default rate that takes effect only if the Banking Law does not direct otherwise.

This reading is reinforced by Section 14-a(5) of the Banking Law, which provides that any reference

> . . . in this chapter or in any other law, contract or document to the rate of interest prescribed or to be prescribed by the banking board or the superintendent pursuant to this section or any former [Section 14-a]. . . shall be deemed a reference to the rate of interest prescribed in subdivision one of this section.

N.Y. Banking Law § 14-a(5). This provision plainly says that the

13

16 percent rate set forth in Section 14-a(1) is intended to succeed the rate that had previously been set by the banking board or banking superintendent and represents the rate "prescribed" by Section 14-a. Because Section 14-a has "prescribed" a "different rate," Section 5-501(1) instructs that the six percent default rate does not apply.

For all of these reasons, I find that Section 14-a "prescribes" the sole rate "specified" in Section 5-501(1) of the G.O.L.: 16 percent. Lee Trucking's objections to Magistrate Judge Eaton's interest calculations under the Trust Agreement are therefore denied.

IV.

Neither Lee Trucking nor Sette-Juliano offer any additional objections to any other portions Magistrate Judge Eaton's Report. I may adopt these uncontested portions unless they show clear error. See Thomas v. Arn, 474 U.S. 140 at 152; Tapia-Garcia, 53 F. Supp. 2d at 373. I have reviewed these uncontested portions and agree with their recommendations. I therefore adopt them.

\*   \*   \*

For the reasons set forth above, Lee Trucking's objections to the Report are denied and the Report's recommendations are adopted in their entirety. Defendant Lee

Trucking shall pay plaintiffs: (1) $84,508.04 in unpaid contributions; (2) $100,146.60 in unpaid interest; (3) $100,146.60 in additional damages; (4) $1,195.00 in audit costs; (5) $4,030.07 in attorney's fees; and (5) $112.43 in additional costs. Defendant Sette-Juliano shall pay plaintiffs: (1) $40,582.48 in unpaid contributions; (2) $60,479.11 in unpaid interest; (3) $60,479.11 in additional damages; (4) $1,420.00 in audit costs; (5) $4,030.07 in attorney's fees; and (5) $144.43 in additional costs. Settle judgment on 10 days notice.

SO ORDERED:

Michael B. Mukasey,
U.S. District Judge

Dated: New York, New York
November 21, 2005

15